# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHLEEN ROCHE, D.C., individually and on behalf of others similarly situated, d/b/a BACK DOCTORS CHIROPRACTIC, <br><br> Plaintiff, <br><br> vs. <br><br> ZENITH INSURANCE COMPANY, <br><br> Defendant. | Case No. 07-CV-0875-MJR-PMF |

## MEMORANDUM AND ORDER

**REAGAN, District Judge**:

### A. Introduction

On July 11, 2007, Roche filed this putative class action in the Central District of California (Doc. 2). On December 7, 2007, that court granted Roche's motion to transfer the case to the Southern District of Illinois (Doc. 38). On March 21, 2008, Roche filed an amended complaint alleging breach of contract (Count 1), unjust enrichment (Count 2), and violations of the Illinois Consumer Fraud and Deceptive Businesses Act (Count 3) (Doc. 60).

On April 14, 2008, Zenith Insurance Company filed a motion to dismiss under **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** (Doc. 63). Having fully considered the parties' filings, the Court hereby **GRANTS IN PART AND DENIES IN PART** the motion dismiss.

### B. Legal Standards Governing a Motion to Dismiss

Dismissal is warranted under **Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE** if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." ***Bell Atlantic Corp. v. Twombly***, --U.S.--, 127 S.Ct. 1955, 1965 (2007); ***EEOC v.***

-1-

*Concentra Health Services, Inc.*, **496 F.3d 773, 776 (7th Cir. 2007).**

Stated another way, the question in a Rule 12(b)(6) motion is whether the complaint gives the defendant fair notice of what the suit is about and the grounds on which the suit rests. *Swierkiewicz v. Sorema N.A.*, **534 U.S. 506, 512 (2002);** *Mosely v. Board of Education of City of Chicago*, **434 F.3d 527, 533 (7th Cir. 2006).** Additionally, although federal complaints need only plead claims, not facts, the pleading regime created by *Bell Atlantic* requires the complaint to allege a plausible theory of liability against the defendant. *Sheridan v. Marathon Petroleum Co., LLC*, **530 F.3d 590, 596 (7th Cir. 2008);** *see also Limestone Dev. Corp. v. Village of Lemont, Ill.*, **520 F.3d 797, 803-04 (7th Cir. 2008).**

In *Tamayo v. Blagojevich*, the Seventh Circuit emphasized that even though *Bell Atlantic* "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required. **526 F.3d 1074, 1083 (7th Cir. 2008).** "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.*; *Accord Pugh v. Tribune Co.*, **521 F.3d 686, 699 (7th Cir. 2008) ("surviving a Rule 12(b)(6) motion requires more than labels and conclusions"; the allegations "must be enough to raise a right to relief above the speculative level").**

In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in plaintiff's favor. *Tricontinental Industries, Inc., Ltd. v. PriceWaterhouseCoopers, LLP*, **475 F.3d 824, 833 (7th Cir.),** *cert. denied*, **128 S. Ct. 357 (2007);** *Marshall v. Knight*, **445 F.3d 965, 969 (7th Cir. 2006);** *Corcoran v. Chicago Park District,* **875 F.2d 609, 611 (7th Cir. 1989).**

## C. Factual Background

Roche is a chiropractor in Illinois. In 1999, she entered an agreement with First Health to become a preferred provider in its preferred provider organization (PPO) network (Doc. 60-3, Exh. 2). Roche alleges that the gist of the PPO agreement is that First Health will contract with payors, the payors will direct patients to the preferred providers in the network, and the preferred providers, will accept reimbursement rates below the usual and customary charges for medical care. The benefit to Roche and other preferred providers is that they receive a higher volume of patients due to these referrals.

Zenith is a workers' compensation carrier, which insures employers with respect to injured workers' claims. Zenith is in fact one of First Health's payors, having entered a separate Payor Agreement with First Health in 2004 (Sealed Doc. 61). In exchange for access to discounted rates via First Health's PPO network, Zenith agreed to compensate First Health by paying it a percentage of Zenith's savings. Roche also claims that the agreement obligated Zenith to encourage its claimants to use First Health's preferred providers. Though Zenith took discounts from those in First Health's PPO network, however, Zenith failed to establish any programs directing its covered claimants to Roche and other Illinois preferred providers.

In early 2007, Zenith submitted payment to Roche for one of its claimants but took a $160.63 discount (See Doc. 60-2, Exh. 1). In doing so, Zenith stated on its explanation of payment (EOP) form: "A PREFERRED PROVIDER DISCOUNT HAS BEEN TAKEN ON YOUR BILL IN ACCORDANCE WITH YOUR FIRST HEALTH CONTRACT." However, Zenith took no steps whatsoever to encourage its claimants to use Roche's services, nor those of any other preferred provider in Illinois. Roche refers to Zenith's use of First Health's discount without fulfilling its obligation to encourage clients to use preferred providers as a "silent PPO scheme."

### D. Analysis

**1. Breach of Contract Claim**

### a. Whether the Provider and Payor Agreements Constitute a Unified Contract

Roche first claims that Zenith's actions constitute a breach of contract. The general theory as stated in the complaint is that Roche's Provider Agreement with First Health and Zenith's Payor Agreement with First Health constitute a unified contract requiring Zenith to take steps to encourage its claimants to use providers in the First Health PPO network in exchange for discounts. Zenith argues that these are separate agreements, and that there is no privity of contract between it and Roche. Consequently, Zenith seeks dismissal of Roche's breach of contract claim with prejudice.

It is undisputed that Roche and Zenith are not parties to a single written agreement. Rather, they each entered into separate, though related, agreements with First Health. Additionally, Zenith entered into the Payor Agreement nearly five years after Roche entered into the Provider Agreement. Nonetheless, Roche argues that the nature of the two contracts' terms and the implicit requirements of any PPO form of managed care creates "a tripartite, not bilateral relationship" (Doc. 67, p. 6). In other words, "two separate instruments constitute one agreement" because the contracts necessarily create a relationship that includes certain obligations and benefits as between Zenith and Roche, even though they never directly contracted with one another (Doc. 67, p. 8). And according to Roche, by taking advantage of a preferred provider discount, Zenith consents to and participates in this "unified contractual relationship" (Doc. 67, p. 6).

In support of this theory, Roche cites ***Baylor University Medical Center v. Epoch Group, L.C.***, a non-precedential case from the Northern District of Texas with facts that closely resemble those currently before the Court. There, a healthcare provider entered into an agreement

with PHCS, a subscriber service, thereby becoming part of the PHCS provider network. **340 F.Supp.2d 749, 752 (N.D. Tex. 2004).** In turn, PHCS entered into a separate contract with Epoch, in which Epoch was permitted to take advantage of discounts for encouraging its insureds to seek treatment from providers in the PHCS network. *Id.* When Epoch refused to pay a claimant's medical charges, the provider sued for breach of contract. The court determined that the two separate agreements in fact constituted a single unified contract between the parties. *Id.* **at 755.** In doing so, however, the court applied Texas law, which provides that multiple instruments may be read together as a single agreement "even if the parties executed the instruments at different times and the instruments do not expressly refer to each other." *Id.* **at 754 (quoting *Fort Worth Independent School Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)).** But the parties agree that Texas law does not apply here, and Roche does not cite any controlling precedent leading to a similar conclusion.

Additionally, in a nearly identical case to the instant matter, the Northern District of Illinois recently found that the theory of two separate agreements constituting a unified contract is unavailing under Illinois law, which provides that "[t]wo agreements executed by different parties cannot be regarded as one instrument." ***Roselle Chiropractic, P.C. v. Hartford Fire Ins. Co.*, No. 07-CV-3479 at 4 (N.D. Ill. Mar. 9, 2009) (Doc. 99) (citing *Ill. Hous. Dev. Auth. v. LaSalle Nat'l Bank*, 487 N.E.2d 772, 776 (Ill. App. Ct. 1985)).**

After consideration of these rulings, and having determined that the Provider and Payor Agreements do not expressly incorporate one another (see Docs. 60-3 & 61), the Court rejects Roche's argument that the Payor and Provider Agreements constitute a single unified contract. As a result, the breach of contract claim must be dismissed to the extent it relies upon this particular theory.

### b. Whether Roche is a Third Party Beneficiary under the Payor Agreement

On the surface, this appears to be the only basis for Roche's breach of contract claim in the complaint. However, the parties have extensively briefed the issue of whether Roche has any rights under the Payor Agreement as a third-party beneficiary. Zenith argues that Roche is not a third party beneficiary and asks for dismissal of Roche's breach of contract claim with prejudice. Though it is not entirely clear whether the complaint sufficiently alleges Roche's potential status as a third party beneficiary, it is clear that both parties believe that this is a component of Roche's claim. Accordingly, the Court will address the issue here.

For contracts claims, Illinois law respects a contract's choice-of-law clause as long as the contract is valid. **Kohler v. Leslie Hindman, Inc., 80 F.3d 1181, 1185 (7th Cir. 1996)**. In this case, the Payor Agreement provides that it "will be governed by and construed in accordance with the laws of the State of California (Doc. 61, ¶ 10.5). As the parties do not contest the contract's validity, the Court applies California law in determining whether Roche's breach of contract claim survives under a third-party beneficiary theory.[1]

Under California law, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." **CAL. CIV. CODE § 1559.** Zenith argues that Roche and other preferred providers cannot be third party beneficiaries to the Payor Agreement, because the agreement specifically provides:

> . . . this Agreement is entered into by and between the parties hereto solely for their benefit. The parties have not created or established

---

[1] On August 19, 2008, Zenith supplemented its motion to dismiss with a recent decision from this District wherein the court dismissed similar claims (Doc. 88). **Roche v. Travelers Property Cas. Ins. Co., 2008 WL 2875250 (S.D.Ill. 2008).** In that case, Illinois law applied to the plaintiff's breach of contract claim. Accordingly, that decision is not persuasive in the instant case.

any third party beneficiary status or rights in any person or entity not a party hereto including, but not limited to, any Claimant, subcontractor, or other third party, and no such third party will have any right to enforce any right or enjoy any benefit created or established under this Agreement (Doc. 61, ¶ 10.2).

However, the presence of such a clause in a contract is not dispositive of whether a third party is entitled to enforce an agreement. In ***Prouty v. Gores Tech. Group***, employees who were terminated by a new parent company sued for violations of the terms of the new parent company's purchase contract with the prior parent company. **121 Cal.App.4th 1225 (Cal. Ct. App. 2004).** The purchase contract provided that the new parent company would not terminate employees within the first 60 days after the stock sale, and that any employees terminated within 90 days after the 60-day period would receive certain severance benefits. *Id.* **at 1228.** Nonetheless, the new parent company terminated certain employees within one week of the stock sale. *Id.* **at 1228–29.**

The defendant's primary argument was that the employees could not enforce the purchase contract, because they were neither parties to the agreement nor third party beneficiaries. Even though the purchase contract stated that it did not "confer upon any Person other than the parties hereto . . . any rights or remedies hereunder," the California Court of Appeal found that the employees were in fact third party beneficiaries. The court explained that it is the parties' actual intent that matters, irrespective of the inclusion of a broad provision disclaiming the existence of any third party beneficiaries. **121 Cal.App.4th 1225 (Cal. Ct. App. 2004).**

> It is not necessary that the beneficiary be named and identified as an individual; a third party may enforce a contract if he can show he is a member of a class for whose benefit it was made . . . .
> The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the

consequences of a performance of the contract.

*Id.* **at 1232 (quoting** *Johnson v. Holmes Tuttle Lincoln-Mercury, Inc.***, 160 Cal.App.2d 290, 296–97 (Cal. App. Ct. 1958) (internal citations omitted)).** And while § 1559 provides that a third party may enforce an agreement only where the contract is made "expressly" for his benefit, the court noted that "The word 'expressly,' by judicial interpretation, has now come to mean merely the negative of 'incidentally.'" *Id.* **at 1232–33 (quoting** *Gilbert Fin. Corp. v. Steelform Contracting Co.***, 82 Cal.App.3d 65, 70 (Cal. App. Ct. 1978)).** Accordingly, "[t]he fact that [a third party] is incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment. It must appear to have been the intention of the parties to secure to him personally the benefit of its provisions." *Id.* **(quoting** *Eastern Aviation Group, Inc. v. Airborne Express, Inc.***, 6 Cal.App.4th 1452 (Cal. App. Ct. 1992)).**

In light of these standards, the court found that the purchase contract's provisions regarding employee termination and severance pay clearly expressed an intent to benefit the employees. The court considered not only the express terms of the agreement in reaching its decision, but also the uncontradicted facts of the negotiation, which revealed that the prior parent company sought to protect its employees against immediate termination. *Id.* **at 1234.** Thus, it is clear that the mere inclusion of a provision disclaiming the existence of any third party beneficiaries is not, in and of itself, dispositive of the issue. Instead, courts must look to the terms of the contract as a whole, in light of the circumstances under which the parties entered into the agreement.

Generally, whether a third party is an intended beneficiary of a contract is a question of fact. *Id.* **at 1233.** With respect to the case at hand, the Court notes that the parties are not yet at the summary judgment stage. Thus, the Court lacks the benefit of any facts regarding the

negotiation, and can only consider the terms of the Payor Agreement at this time. The terms of that agreement suggest, however, that Roche and other preferred providers may be third party beneficiaries. The Payor Agreement includes various provisions indicating that, as a condition of receiving access to the First Health PPO Network and obtaining provider discounts, Zenith must take steps that directly benefit the preferred providers, including

> 2.1 [Zenith] will advise Claimants and employers as to the identity of all of the Contract Providers who are part of The First Health Network . . . and will use best efforts to direct Claimants to Contract Providers first, prior to directing Claimants to providers in any other network . . . and [Zenith] will not utilize The First Health Network in a secondary position to another network with regard to application of negotiated rates or with regard to notification to Claimants.
> . . . .
> 2.2 [Zenith] will encourage Claimants to use services of Contract Providers in a manner to be mutually agreed upon by First Health and [Zenith]. (Doc. 61, Supplement A).

These provisions appear to be for the benefit of preferred providers within the First Health Network, and such benefit does not appear to be merely incidental. The language of the contract suggests that the parties specifically intended that the providers in the PPO network directly benefit. As the case proceeds, discovery may shed further light on the parties' intent. At this time, however, Roche's allegations and the Payor Agreement itself support a breach of contract claim under a third party beneficiary theory.

*Ochs v. PacifiCare of California* is not to the contrary. **115 Cal.App.4th 782 (Cal. App. Ct. 2004).** There, Ochs treated PacifiCare enrollees covered by the Family Health Network (FHN). Ochs had no contract with either PacifiCare of FHN, but was required by state and federal law to provide emergency services without regard for a patient's ability to pay. Ochs sought payment from PacifiCare, which declined to pay on the grounds that it had entered into a contract delegating that responsibility to FHN. However, because FHN declared bankruptcy and could not

pay, Ochs filed suit against PacifiCare.

In part, Ochs claimed the status of a third party beneficiary under the contract between FHN and PacifiCare. The court noted: "Generally speaking, a health care service provider's agreement to pay for medical care is intended to benefit the enrollees, not treating physicians with whom there is no contractual relationship." *Id.* **at 795.** The court ultimately found that Ochs could not state a claim for breach of contract because

> [u]nder ordinary circumstances, noncontracting health care providers such as Ochs would be only incidental beneficiaries of a contractual agreement to pay for an enrollee's medical care. The first amended complaint does not allege a more specific agreement that might support a third party beneficiary theory, and the demurrer was properly sustained as to this count.

*Id.* **at 795–96.**

Here, the Court does have access to a more specific agreement. The Payor Agreement at issue here involves Zenith contracting for the express purpose of obtaining access to the PPO network, so that Zenith could obtain significant discounts from preferred providers in the network (i.e., Roche and the putative class). Additionally, as a condition of the contract, Zenith expressly agreed to "advise" its claimants as to the identities of these preferred providers and "encourage" claimants to seek treatment from preferred providers within the network. Roche alleges that Zenith failed to do so, and therefore, improperly took discounts from those in the PPO network. In light of this, the Court finds that Roche may in fact have a cognizable claim for breach of contract as a third party beneficiary, at least in light of the facts pled in the complaint and the Payor Agreement itself.[2]

---

[2] The Court notes that Zenith has asked the Court to consider the Northern District of Illinois's recent decision in ***Roselle Chiropractic, P.C. v. Hartford Fire Ins. Co.*, No. 07-CV-3479 (N.D. Ill. Mar. 9, 2009) (Doc. 99).** As indicated above, the Court considered this decision

To the extent that Roche's complaint seeks recovery under the Provider Agreement or a so-called tripartite agreement, the Court **GRANTS** the defendant's motion to dismiss the breach of contract claim pursuant to Rule 12(b)(6). However, because the complaint is not a model of clarity and does not explicitly seek relief under a third party beneficiary theory, the Court permits Roche to amend her complaint to state her breach of contract claim as a third party beneficiary.

**2. Claims for Unjust Enrichment and Violations of the Illinois Consumer Fraud Act**

As an alternative to breach of contract, Roche claims that Zenith's actions constitute unjust enrichment (Count 2). Additionally, Roche alleges that Zenith has violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Count 3). The parties agree that Illinois law applies to these claims. The gist of Zenith's argument is that it is a workers' compensation carrier, and any responsibility it has to pay the injured employee's medical expenses here fall within the purview the Workers' Compensation Act. Zenith argues that such claims can only be raised before the Illinois Industrial Commission, citing **820 ILCS 305/18**, which provides: "All questions arising under this Act . . . shall, except as otherwise provided, be determined by the Commission." Additionally, Zenith claims that under Illinois law, a medical provider cannot sue a workers' compensation carrier under any circumstances.

To support this proposition, Zenith cites ***Foster McGaw Hosp. of Loyola Univ. Chicago v. Building Material Chauffeurs, Teamsters and Helpers Welfare Fund of Chicago, Local 786***. There, a patient died from injuries he received after he was pinned against a wall while

---

with respect to Roche's suggestion that the Payor and Provider Agreements constitute a single, unified contract. However, the Northern District of Illinois's discussion of whether the plaintiff was a third party beneficiary relies on Illinois law. As California law applies to the Payor Agreement, this particular aspect of the ***Roselle*** decision is not helpful in determining whether Roche is a third party beneficiary.

repairing a Bobcat. **925 F.2d 1023 (7th Cir. 1991).** The patient was insured under two separate plans. One was a workers' compensation plan, which provided coverage for on-the-job injuries, and the other was a welfare plan covered by ERISA, which provided coverage for injuries occurring outside the employment context. However, each claimed that the other was responsible for payment. Specifically, the welfare plan claimed that the injury occurred in course of employment, while the workers' compensation carrier claimed that it did not. As a result, each refuse to pay the provider.

In its attempt to recover payment, the hospital sued the welfare plan only. *Id.* **at 1024.** In explaining why the workers' compensation carrier was not a party to the suit, the Seventh Circuit stated that "Illinois law does not allow a provider of medical care to sue a workers' compensation carrier." *Id.* Obviously, this statement was not part of the court's holding, but rather dicta explaining why the hospital chose not to join both insurers as interpleader defendants.

Additionally, the court's statement in *Foster McGaw* was made in the context of a medical provider trying to establish an insurer's liability for coverage in the first instance. In that context, Illinois law clearly states that "No payment, claim, award, or decision under this Act shall be assignable." **820 IlCS 305/21.** But this Court is confronted with a very different situation. Zenith has already indicated that it is responsible for the patient's claim, as Zenith sent payment to Roche and other members of the putative class. The sole question here is whether Zenith was permitted to take discounts on these medical expenses pursuant to its Payor Agreement. In other words, Zenith either properly took the discount and the expenses have been paid in full, or Zenith did not properly take the discount and is responsible for the balance.

The parties fail to point out any binding decision that is factually similar. However, in a nearly identical case, the Northern District of Illinois found that a medical provider's claim that a workers' compensation carrier had improperly taken a PPO discount did not arise under the

Workers' Compensation Act at all. *Roselle Chiropractic, P.C. v. Hartford Fire Ins. Co.*, **No. 07-CV-3479 (N.D. Ill. Jan. 31, 2008) (Doc. 42) (docketed herein as Doc. 67-2).**[3] This Court finds that decision persuasive, and therefore follows its reasoning. There, the court explained the difference between Roselle's claim and those raised under the Act.

> Roselle is not seeking to recover damages for an employee's injury or to have the reasonableness of its rates determined; it is seeking instead to recover damages from Hartford on the independent basis of Hartford's allegedly fraudulent activity or breach of contract. Roselle will no doubt be seeking more than merely the difference between its bill and what Hartford paid; and such additional relief is not available from the Commission. It is also seeking to represent a class of medical providers, which would be procedurally impossible before the Commission. The claims here do not "arise under" the Act, the Commission does not have exclusive jurisdiction over them, and they are not barred by the exclusive remedy clause. If they are not heard by the courts, they likely will not be heard at all.

*Id.* **at 5–6.** Importantly, the court made its ruling only after considering a variety of Illinois decisions reaching the same conclusion.

Roche's claims are nearly identical to those addressed by the Northern District of Illinois in Roselle. The Court adopts the well-reasoned decision in *Roselle* in finding that the Workers' Compensation Act does not prohibit Roche's claims. Accordingly, Zenith's motion must be **DENIED** to the extent that it seeks dismissal of Counts 2 and 3 of Roche's amended complaint.

### 3. Remaining Issues

Finally, on August 19, 2008, Defendant filed a memorandum of supplemental

---

[3] The Northern District of Illinois's March 9, 2009 order in the *Roselle* case sheds no light on this particular issue. **No. 07-CV-3479 (N.D. Ill. Mar. 9, 2009) (Doc. 99).** Nothing in that Order pertains to the unjust enrichment or Illinois Consumer Fraud and Deceptive Practices Act claims presented here. Rather, the court noted that the plaintiff had abandoned any unjust enrichment or statutory claims by voluntarily omitting them from its amended complaint, despite the court's earlier refusal to dismiss those claims.

authority (Doc. 88), pointing out a factually similar case within this District, *Roche v. Travelers Property Cas. Ins. Co.*, **2008 WL 2875250 (S.D.Ill. 2008).** In *Travelers Property*, the court dismissed the plaintiff's unjust enrichment claim because it improperly relied upon allegations of an express contract. The Court declines to reach the question of whether the same result is required here, since Zenith failed to seek dismissal on these particular grounds in its original motion.

### E. Conclusion

For the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss (Doc. 63). The motion is **GRANTED** to the extent that the Court dismisses Count 1, but Roche is given leave to file an amended complaint clearly stating her breach of contract claim under a third party beneficiary theory. The motion is **DENIED** in all other respects. Roche's amended complaint shall be filed **no later than March 18, 2009.**

**IT IS SO ORDERED.**

**DATED this 12th day of March 2009.**

                                  **s/ Michael J. Reagan**
                                  **Michael J. Reagan**
                                  **United States District Judge**