# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHLEEN ROCHE, D.C., ) <br> individually and on behalf of others ) <br> similarly situated, d/b/a ) <br> BACK DOCTORS CHIROPRACTIC, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ZENITH INSURANCE COMPANY, ) <br> ) <br> Defendant. ) | Case No. 07-CV-0875-MJR-PMF |

## MEMORANDUM AND ORDER

**REAGAN, District Judge**:

### A. Introduction

On July 11, 2007, Roche filed this putative class action under the Class Action Fairness Act, **28 U.S.C. § 1332(d)(2)(A)**, against Zenith Insurance Company in the Central District of California (Doc. 2). On December 7, 2007, that court granted Roche's motion to transfer the case to the Southern District of Illinois (Doc. 38). On March 21, 2008, Roche filed a second amended complaint alleging breach of contract (Count 1), unjust enrichment (Count 2), and violations of the Illinois Consumer Fraud Act (Count 3) (Doc. 60). On March 12, 2009, the Court dismissed Roche's breach of contract claim, as she was not in privity with Zenith (Doc. 115), but permitted her to file an amended complaint so as to state a breach of contract claim as a potential third party beneficiary.[1]

---

[1] The motion for class certification was briefed prior to the Court's ruling on Zenith's motion to dismiss. As a result, Zenith raises a number of the same arguments in both motions, including whether the Payor and Provider Agreements can be construed as a single agreement (the Court has since found they cannot) and whether preferred providers such as Roche can state a breach of contract claim as third party beneficiaries under California law (the Court found that such a claim may be viable). Zenith raises these issues here in the context of whether

-1-

On March 18, 2009, Roche filed a third amended complaint, alleging the same three causes of action, but altering the breach of contract claim to rely on Roche's alleged status as a third party beneficiary (Doc. 116). The general allegations therein are as follows.

Roche is a chiropractor in Illinois. In 1999, she entered an agreement with First Health to become a preferred provider in its preferred provider organization (PPO) network (Doc. 60-3, Exh. 2). Roche alleges that the gist of the PPO agreement is that First Health will contract with payors, the payors will direct patients to the preferred providers in the network, and the preferred providers, will accept reimbursement rates below the usual and customary charges for medical care. The benefit to Roche and other preferred providers is that they receive a higher volume of patients due to these referrals.

Zenith is a workers' compensation carrier, which insures employers with respect to injured workers' claims. Zenith is in fact one of First Health's payors, having entered into a separate Payor Agreement with First Health in 2004 (Sealed Doc. 61). In exchange for access to discounted rates via First Health's PPO network, Zenith agreed to compensate First Health by paying it a percentage of Zenith's savings. Roche also claims that the agreement obligated Zenith to encourage its claimants to use First Health's preferred providers. Though Zenith took discounts from providers in First Health's PPO network, however, Roche alleges that Zenith failed to establish any programs directing its covered claimants to Roche and other Illinois preferred providers.

In early 2007, Zenith submitted payment to Roche for one of its claimants and took a $160.63 discount (See Doc. 60-2, Exh. 1). In doing so, Zenith stated on its explanation of payment

---

individualized proof is required as to each class member's claim. However, as the Court makes clear below, the prior ruling on Zenith's motion to dismiss effectively resolves any related issues in the class certification inquiry as well. In any case, the Court notes that it does not consider the strength of the merits in determining whether the class should be certified.

(EOP) form: "A PREFERRED PROVIDER DISCOUNT HAS BEEN TAKEN ON YOUR BILL IN ACCORDANCE WITH YOUR FIRST HEALTH CONTRACT." However, Roche claims that Zenith took no steps whatsoever to encourage its claimants to use Roche's services, nor those of other preferred providers in Illinois. As a result, Roche claims that Zenith had no right to take the discount. Roche refers to Zenith's use of First Health's discount without fulfilling its alleged obligation to encourage clients to use preferred providers as a "silent PPO scheme."

Now before the Court is Roche's motion for class certification (Doc. 93). Roche seeks certification of the following class:

> All licensed healthcare providers in the State of Illinois who signed a First Health provider agreement (similar to Plaintiff's), and who: (a) submitted a bill for services to Zenith for services provided to a Zenith covered claimant; and (b) received or were tendered partial payment but in an amount less than the submitted medical expenses based on a First Health PPO discount (e.g., codes A1E or A22).

The Court held a hearing on March 19, 2009 (Doc. 108). However, because Roche filed her third amended complaint only a day before the hearing (Docs.116 & 117), the Court permitted one round of supplemental briefing (Docs. 121 & 125).

Having fully reviewed all of the parties' filings, the Court now **DENIES** Roche's motion for class certification.

## B. Analysis

**FEDERAL RULE OF CIVIL PROCEDURE 23** governs the issue of class certification. A proposed class must meet the four prerequisites listed in **Rule 23(a)**:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the

interests of the class.

Additionally, a class must be at least one of the three requirements of **Rule 23(b)**. Here, Roche proceeds under **Rule 23(b)(3)**, which requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The movant bears the burden of proving that Rule 23's requirements are met. ***General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982);** ***Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).** However, in determining whether a class should be certified, the Court does not consider the merits of the plaintiff's claims. ***Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002);** *see Eisen v. Carlisle and Jacquelin*, **417 U.S. 156, 178 (1974)** **("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (quoting** *Miller v. Mackey Int'l*, **452 F.2d 424 (5th Cir. 1971)).** However, this does not mean that the Court is required to accept the allegations in the plaintiff's complaint as true—rather, the Court must "make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, **249 F.3d 672, 675-76 (7th Cir. 2001).**

### 1. The Requirements of Rule 23(a)

The Court first considers whether Roche has satisfied all of the prerequisites identified in Rule 23(a).

#### a. Numerosity

As noted above, **Rule 23(a)** requires that the class be "so numerous that joinder of

all members is impracticable." Roche claims that the class would include over 100 medical professionals who sent claims to Zenith for which a First Health PPO discount was applied. Zenith does not dispute this fact and makes no challenge as to Roche's ability to show numerosity. Accordingly, the requirement of numerosity is satisfied.

### b.  Commonality

Questions of law or fact must be common to the class, pursuant to Rule 23(a)(2). Other district courts within this Circuit have characterized the commonality requirement as a "low hurdle." ***Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 378 (S.D. Ill. 2008);** ***Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996);** ***Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).** Indeed, the Seventh Circuit has explained that "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement." ***Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).**

Again, Zenith makes no direct challenge to Roche's ability to satisfy this particular requirement. In any case, there appear to be basic questions applicable to the entire class, including whether they are third party beneficiaries, whether and to what extent Zenith developed programs to encourage injured workers to utilize the services of First Health's preferred providers, and whether Zenith's course of conduct resulted in taking First Health PPO discounts that it was not entitled to take. As the claims alleged against Zenith in this action all stem from a common course of conduct, it appears that the commonality requirement has also been satisfied.

### c.  Adequacy

**Rule 23(a)** also requires that "the representative parties will fairly and adequately protect the interests of the class." A plaintiff may be considered adequate if she "possess[es] the same interest and suffer[ed] the same injury as the class members." ***Uhl v. Thoroughbred Tech. &***

*Telecomms., Inc.*, **309 F.3d 978, 985 (7th Cir. 2002).** So long as there is no inconsistency or conflict between the interests of the representative and the class, the adequacy requirement is generally satisfied. *See In re General Motors Corp. Dex-Cool Prod. Liab. Litig.*, **241 F.R.D. 305, 313 (S.D. Ill. 2007).**

Here, there is no indication that Roche's interests and those of the class would be inconsistent. Again, Zenith does not directly contest the conclusion that Roche has met her burden with respect to the adequacy prong of Rule 23. Thus, this requirement is also satisfied.

### d. Typicality

Zenith does argue, however, that Roche cannot meet the typicality requirement. **Rule 23(a)(3)** requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." In determining whether typicality exists, the Court asks whether the representative's claims bear the same essential characteristics as the class. *Retired Chicago Police Ass'n*, **7 F.3d at 596-97.** "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, **713 F.2d 225, 232 (7th Cir. 1983) (quoting H. NEWBERG, CLASS ACTIONS § 1115(b) at 185 (1977)).**

Zenith claims that typicality is not present here because, while Zenith did not directly refer the patient that Roche treated, other providers did receive patients directly referred by Zenith. Zenith claims that even under Roche's legal theory, Zenith was entitled to take the PPO discount from those providers to whom it did in fact refer patients. Because the class would include both providers to whom Zenith referred patients and those to whom Zenith did not, the Defendant argues that Roche's claims are not typical of the class at large.

Roche, on the other hand, argues that its legal theories are focused on Zenith's overall course of conduct, because Zenith systematically applied the PPO discounts through an automated process without any consideration of whether a referral had been made. Additionally, she claims that the providers' rights as third party beneficiaries all stem from the same document: Zenith's Payor Agreement with First Health. Likewise, her unjust enrichment and statutory claims specifically focus on this course of conduct in that Roche alleges Zenith improperly and/or fraudulently took PPO discounts despite never having established a system to encourage or direct injured workers to preferred providers within the First Health network.

Though Roche's claims may not be identical to those of all other class members, the Court finds that her claims are typical. While the evidence in the record does indicate that Zenith makes some referrals, William Robinson, Zenith's Assistant Vice President Claims Manager for the Midwest, explained there is no single process in Illinois by which Zenith directs all injured workers who are entitled to coverage to use preferred providers (Doc. 103, Exh. C at 107-08). Indeed, he states that most of the time, the injured worker will have already sought treatment before contacting Zenith (Doc. 103, Exh. C at 146-49). In fact, Robinson estimated that this is the case between 90% and 99% of the time (Doc. 103, Exh. C at 147-48). As a result, the claims examiner typically provides a recommendation "if it ever comes up in the conversation or the examiner can tell from speaking with the injured worker that they need help finding a provider" (Doc. 103, Exh. C at 148). However, Robinson did indicate that Zenith often has the opportunity to recommend a provider when an employee needs followup treatment or physical therapy (Doc. 103, Exh. C at 150).

In light of all of this, it appears that in many cases, the PPO discount is taken despite the absence of a direct referral or recommendation. This appears to be the crux of the lawsuit.

Resolution of Roche's claim will involve a large amount of common evidence involved in the class claims. Because the general course of conduct alleged is similar as it pertains to each class member, the Court finds that Roche's claims are typical of the class.

## 2.  The Requirements of Rule 23(b)(3)

Having determined that Roche has satisfied the requirements of Rule 23(a), the Court now moves to the analysis under **Rule 23(b)(3)**, which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The rule further provides:

> The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

In determining whether the predominance requirement has been met, the Court must "look beyond the pleadings to determine whether the plaintiff's claims are subject to class-wide proof by common evidence."  *Siegel v. Shell Oil Co.*, **2009 WL 449073, \*2 (N.D. Ill. Feb. 23, 2009)** (**citing** ***Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 747-48 (7th Cir. 2008);** *Andrews v. Chevy Chase Bank***, 545 F.3d 570, 577 (7th Cir. 2008);** *Pastor v. State Farm Mut. Auto. Ins. Co.***, 487 F.3d 1042, 1046-47 (7th Cir. 2007);** *Hewitt v. Joyce Beverages of Wis., Inc.***, 721 F.2d 625, 628-29 (7th Cir. 1983)).**

Zenith's argument against class certification focuses on the predominance inquiry. Because Zenith addresses the issue of predominance with respect to each of Roche's causes of action

separately, the Court addresses the arguments as to each claim in turn.

### a. Roche's Breach of Contract Claim

First, Zenith argues that individual issues will dominate the proceedings because the Court would have to consider each and every class member's Provider Agreement in order to determine what their expectations were with respect to any Payor's obligation to channel patients to those in the PPO network. Additionally, Zenith argues that the Court would have to inquire as to whether particular class members have standing to sue (i.e., whether they are in fact in privity with Zenith).

These issues have effectively been resolved by the Court's ruling on Zenith's motion to dismiss (Doc. 115). The Court has already determined that Roche has no claim under the theory that the separate Payor and Provider Agreements constitute a single contract. But as the Court noted in its Order, Roche and the class members may have a viable contract claim as third party beneficiaries under the Payor Agreement. The Payor Agreement requires Zenith to use reasonable means to encourage and/or direct claimants to use those providers in the PPO network. If sufficient evidence exists to push that issue to trial, every class member's claim as a third party beneficiary would arise under a single contract—the Payor Agreement. And because that agreement simply refers to the class of providers in the PPO network, no individualized inspection of each member's contract with First Health would be necessary.

However, determining whether Zenith actually breached any obligation to encourage claimants to utilize those in the PPO network is a different matter. Under Roche's theory, Zenith is entitled to take PPO discounts only if it actually encouraged or referred a patient to a preferred provider. It appears undisputed that, at least in some cases, Zenith did in fact directly refer injured

workers to First Health providers. The current proposed class definition includes providers who received patients directly referred by Zenith. Though such referrals may have constituted as little as 5% to 10% of the claims submitted from First Health providers (*see* Doc. 103, Exh. C at 147-49), individualized inspection of a sizeable portion of the class is necessary to determine whether any discount would have been proper.[2] Thus, the evidence before the Court would obviously focus, in part, on whether any particular claimant had actually been referred to a First Health provider as a result of Zenith's efforts.

Answering the question of which claimants were directly referred by Zenith may be difficult and individualized. While Zenith attempts to track all direct referrals (Doc. 103, Exh. C at 83, 141-42), it does not track them all. Determining which particular patients were directly referred appears to involve examining each individual's Zenith claim file, and perhaps an individual provider's records, to determine whether Zenith gave a direct referral.

Irrespective of the small percentage of direct referrals provided by Zenith in Illinois, Zenith claims that it takes certain steps short of direct referral to encourage claimants to use those providers in the PPO network, and thereby complies with any potential "steerage" requirement in

---

[2] Roche argues that Zenith admits that it only directly refers a patient to a particular provider 1% of the time. Roche's position stems from statements made by William Robinson, Zenith's Assistant Vice President Claims Manager of the Midwest Region. In his deposition, Robinson indicated that in most cases, injured employees have already received treatment before they contact Zenith, in which case Zenith lacks the opportunity to refer them to a preferred provider, at least for the initial treatment (Doc. 103, Exh. C at 147-49). Though Robinson initially stated that this is what occurs 99% of the time, he immediately retracted that estimate and explained that it was too high, and that the number is actually closer to 95% or 90%. He also indicated that Zenith encourages employees to use preferred providers "[a]ll the time," and that even where employees go to the emergency room or another doctor before contacting Zenith, Zenith is still able to encourage employees to use preferred providers for followup treatment, testing, and physical therapy (Doc. 103, Exh. C at 150).

the contract. In particular, Zenith states that immediately after a new client-employer obtains a policy, Zenith provides the employer with information on how to inform its workers about preferred providers (Doc. 103, Exh. C at 75-88). Zenith's Safety and Health department also institutes programs for employees, which include informing them about the opportunity to obtain referrals directly from Zenith (Doc. 103, Exh. C at 77-79). Through its various efforts, it appears that employers and employees are provided with information on what to do if an injury occurs, a phone number they should call, and a website address where they can search for preferred providers as needed (Doc. 103, Exh. C at 77-81; Doc. 103, Exh. E; *see* Doc. 103, Exh. D). Ultimately, it appears that Zenith provides the claimants with at least some information on how to obtain a referral if one is desired. Whether or not these actions are sufficient to satisfy any contractual encouragement or "steerage" requirements is a separate question that will require individualized inquiries, as the level of information provided to each employer and/or employee differs depending on the circumstances. In other words, while Zenith's conduct may comply with the contract as to some claimants, its conduct as to others may be deficient.

As a result, the Court will have to consider information with respect to each individual employer and employee, including to what extent Zenith's particular actions as to each employer complied with the Payor Agreement. The Court would then have to consider whether and to what extent each employer utilized any information provided. For instance, some employers may have offered financial incentives for use of the network, while others may not have. Other employers may have obtained preferred provider information up front and provided the information to employees so as to ensure that those in the PPO network would be utilized in the event of any injury (*see* Doc. 103, Exh. C at 77-78). The individual questions involved in making these

determinations are an important aspect of Zenith's defense to each class member's claim.

Clearly, these individual issues will be a major focus at trial. Because Zenith claims it provides PPO information to its clients in all cases, the Court may have to hold separate evidentiary hearings for each class member, which would eliminate any benefit provided by class-action treatment. With this in mind, the Court finds that Roche has failed to establish that questions of fact and law common to the class predominate over individual issues with respect to the breach of contract claim.

### b. Roche's Unjust Enrichment Claim

Roche pleads unjust enrichment as an alternative to her breach of contract claim. Zenith first opposes class certification as to this claim on the grounds that the Court will be required to determine whether any individual class member has a contract governing its relationship with Zenith, since unjust enrichment claims have no application where a written contract controls. But as the Court explained earlier, Roche and the class may be able to raise breach of contract claims under a third party beneficiary theory. And because only one agreement is at issue (Zenith's Payor Agreement), it is not clear that analyses as to each individual class member would be necessary. Either all providers in the class are third party beneficiaries or none of them are. No individualized inquiry would be necessary on these grounds.

Zenith next claims that even if no contractual obligations govern its relationship with the class, the Court will still have to consider whether Zenith retained a benefit to any particular member's detriment and whether the retention of that benefit violates the principles of equity. According to Zenith, determining what is just and equitable requires an individual determination, since the Court would have to consider what each provider expected and whether each accepted

payment at the discounted rate without complaint.

"The essential element of a contract implied in law is the receipt of benefits by one party, which it would be inequitable for him to retain without payment; it is predicated on the principle that no one should unjustly enrich himself at another's expense." ***Schlosser v. Welk*, 550 N.E.2d 241, 242-43 (Ill. App. Ct. 1990).** Roche's basic theory is that it is unjust for Zenith to retain the discount without undertaking the implied obligation of encouraging claimants to use those providers in the PPO network. In the Court's view, if Roche is able to show that such an implied obligation existed by virtue of Zenith's participation in the PPO network or else information included on its EOP forms, such an obligation would be common to the class.

But even so, the Court will still be confronted with the same individualized inquires as discussed above in the breach of contract analysis. Even under the unjust enrichment count, the Court must decide whether Zenith's actions with respect to each claimant constituted adequate encouragement to use preferred providers, thereby fulfilling any particular provider's expectations. And in conducting that inquiry, individual considerations predominate. As the Court has already explained why this is so, it should be clear that class certification of the unjust enrichment claim is not warranted under Rule 23(b)(3). Roche has failed to carry her burden of showing that class certification is appropriate.

### c. Roche's Claim under the Illinois Consumer Fraud Act

Zenith next argues that individual issues predominate with respect to Roche's claim under the Illinois Consumer Fraud Act (ICFA). As a preliminary matter, the Court notes that many of Zenith's arguments go the merits or were resolved in the Court's prior Order granting in part Zenith's motion to dismiss (Doc. 115), including Zenith's argument that the Workers' Compensation

Act preempts Roche's claims altogether. Zenith also argues that its participation in the First Health network cannot in and of itself constitute an inherently deceptive or unfair practice, and that Illinois law does not require it to provide incentives for claimants to use certain providers. These arguments go to the merits of Roche's claim. Here, the Court is confined to the question of whether Rule 23 certification is appropriate.

However, Zenith's argument that individual questions will predominate in determining the issue of deception under the ICFA is persuasive. The ICFA prohibits the use of unfair or deceptive business practices, "including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . ." **815 ILCS 505/2.** The elements of an ICFA action are: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, **835 N.E.2d 801, 850 (Ill. 2005).**

Roche's claim is that Zenith fraudulently took PPO discounts and deceived providers into believing it was entitled to do so by stating in its EOPs that "A PREFERRED PROVIDER DISCOUNT HAS BEEN TAKEN ON YOUR BILL IN ACCORDANCE WITH YOUR FIRST HEALTH CONTRACT." Zenith claims that in order to determine whether each provider was deceived requires an individual consideration of what each provider knew and believed upon seeing the statement. The Court agrees.

Even if Zenith was not entitled to the discount, the Court would have to inquire as

to whether each particular provider was in fact deceived by the false statement and then mistakenly accepted a reduced payment in reliance on it. As explained by the Northern District of Illinois in *Siegel*, the "proposed class requires the Court to determine how each plaintiff reacted to Defendants' alleged unfair and deceptive conduct." **2009 WL 449073, at \*4.** As such, it is not clear that common evidence can be used to prove the element of reliance for Roche's ICFA claim.

Additionally, the problem of predominating individual issues is present, because recovery depends on whether Zenith was entitled to the discount in the first place. Obviously, if Zenith was entitled to a discount in a particular instance, no deceptive act occurred. To determine that basic question, the Court would have to conduct an individualized inquiry as to whether Zenith's conduct fulfilled the obligation to encourage each claimant to use a preferred provider. As with Roche's breach of contract and unjust enrichment claims, this serves as a barrier to class certification because the Court would necessarily have to consider each class member's individual circumstances to determine whether Zenith's discount was properly applied on a particular claim. Because the Court has thoroughly explained why this is so in its analysis regarding certification of the breach of contract claims, no further discussion is necessary.

Accordingly, the Court finds that Roche has not met her burden of showing that common issues predominate over individualized questions. Thus, class certification must be denied as to Roche's ICFA claim as well.

### d. Proof of Injury

Finally, Zenith argues that individualized issues predominate with respect to each class member's proof of injury. Specifically, Zenith claims that it is entitled to dispute the necessity of any claimant's treatment and the reasonableness of the provider's charges. Because class

certification must be denied as to all of Roche's claims on other grounds, the Court need not reach this issue.

### C. Conclusion

For all of the reasons explained above, the Court **DENIES** Roche's motion for class certification (Doc. 93).

As a final note, the Court reminds the parties that they are to request a scheduling conference with Magistrate Judge Frazier within 30 days after the entry of this Order (*see* Doc. 131).

**IT IS SO ORDERED.**

**ENTERED this 11th day of June 2009.**

                                          **s/ Michael J. Reagan**
                                          **MICHAEL J. REAGAN**
                                          **United States District Judge**